IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK WORKER, )
 )
      Plaintiff, )
 )
vs. ) Case No. 17-cv-384-JPG-CJP
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
      Defendant. )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Mark Worker, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Worker applied for DIB in November 2013 alleging disability beginning in November 2011. He later amended his alleged onset date to January 1, 2014. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Matthias D. Onderak denied the application on May 3, 2016. (Tr. 22-31.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ erred in finding that he had no severe impairments at step two; in particular, the ALJ erred in finding that the amputation of his dominant right hand at the wrist was not a severe impairment.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work

experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### The Decision of the ALJ

ALJ Onderak ostensibly followed the five-step analytical framework described above. He determined that Mr. Worker had not worked at the level of substantial gainful activity since the alleged onset date, and that he was insured for DIB through December 31, 2017. He found that plaintiff had the following impairments: hypertension, high cholesterol, "right hand impairment and left foot impairment with peripheral neuropathy," headaches, and history of fractured right leg, healed. He concluded that none of these impairments was severe.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1.   **Agency Forms**

Plaintiff was born in 1959 and was 54 years old on the alleged date of onset. (Tr. 218.) He was almost 57 years old on the date of the ALJ's decision.

Plaintiff had worked in the past as a truck driver, factory worker and heavy equipment operator. (Tr. 221.)

Plaintiff said he was unable to work because his right hand was amputated and some of his toes were attached to his stump. (Tr. 197.) He was right-handed. (Tr. 202.) He had numbness and constant pain in his right arm, numbness in the left leg, and headaches. (Tr. 262.)

2.   **Evidentiary Hearing**

Mr. Worker was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 38.)

In June 1979, plaintiff's right hand was amputated down to the wrist following an on-the-job accident. The second toe from each foot was removed and grafted onto his stump to form a crab claw configuration. He was able to work for some time after that injury but had increasing problems with pain. He could hardly use his right hand for anything at the time of the hearing. (Tr. 67-71.) In May 2015, his right leg was fractured in an accident when he was driving a truck for a friend. He still had pain and swelling in that leg. He walked with a cane for stability. He also had pain in his left leg related to the removal of his toe and tissues. He was

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1.   **Agency Forms**

Plaintiff was born in 1959 and was 54 years old on the alleged date of onset. (Tr. 218.) He was almost 57 years old on the date of the ALJ's decision.

Plaintiff had worked in the past as a truck driver, factory worker and heavy equipment operator. (Tr. 221.)

Plaintiff said he was unable to work because his right hand was amputated and some of his toes were attached to his stump. (Tr. 197.) He was right-handed. (Tr. 202.) He had numbness and constant pain in his right arm, numbness in the left leg, and headaches. (Tr. 262.)

2.   **Evidentiary Hearing**

Mr. Worker was represented by an attorney at the evidentiary hearing in March 2016. (Tr. 38.)

In June 1979, plaintiff's right hand was amputated down to the wrist following an on-the-job accident. The second toe from each foot was removed and grafted onto his stump to form a crab claw configuration. He was able to work for some time after that injury but had increasing problems with pain. He could hardly use his right hand for anything at the time of the hearing. (Tr. 67-71.) In May 2015, his right leg was fractured in an accident when he was driving a truck for a friend. He still had pain and swelling in that leg. He walked with a cane for stability. He also had pain in his left leg related to the removal of his toe and tissues. He was

taking Gabapentin and Tramadol. (Tr. 55-58.)

A vocational expert (VE) testified that plaintiff had no skills that were transferrable to sedentary work. (Tr. 91.)

### 3. Medical Records

Medical records confirm that plaintiff's right had was amputated at the wrist in 1979 and that the second toe from each foot, along with tendons, were transferred to his right stump to form a pincher. Plaintiff complained to his doctor of worsening pain and numbness in the left foot in August 2014. The doctor felt it was "wear on his donor sites." He was prescribed Gabapentin and Tramadol. (Tr. 349-51.)

Plaintiff's right tibia and fibula were fractured in May 2015. He was initially treated with an external Ilizarov frame but later required an open reduction and internal fixation procedure. In January 2016, x-rays showed the fractures to be well-aligned with no hardware loosening. (Tr. 360-61.)

## Analysis

A severe impairment is an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).[1] Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." § 404.1522(b)(1).

"Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may

---

[1] Some of the social security regulations were revised and renumbered effective March 27, 2017. The revisions do not affect the substance of the analysis here, and the court cites to the versions now in effect.

eliminate a large number of occupations a person could otherwise do." Social Security Regulation (SSR) 85-15, 1985 WL 56857, at *7 (1985).

Mr. Worker has no right hand; only two toes attached to his wrist to form a "pincher." It is inconceivable that he would not have, at the very minimum, significant limitations in his ability to handle. The ALJ's conclusion to the contrary is not supported by substantial evidence.

The Commissioner's attempt to support the ALJ's decision is so weak as to require little discussion. The Court must point out that the Commissioner's description of "basic work activities" omits any mention of "handling," which is the most relevant here (Doc. 16 at 3). The Commissioner's argument does not focus on plaintiff's lack of a hand but instead seeks to demonstrate that the evidence supports a finding that he is able to work despite his various impairments. This argument "conflate[s] Steps 2, 4, and 5. . . . [A]n assessment of the functional limitations caused by an impairment is more appropriate for Steps 4 and 5, not Step 2." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016).

The Commissioner has not argued that the failure to find that plaintiff has a severe impairment was a harmless error. Any such argument would fail. The ALJ did not reach a conclusion as to plaintiff's RFC, and the Court is not suggesting what that assessment should be. However, Mr. Worker was in the "advanced age" category (age 55 or older) on the date of the ALJ's decision. 20 C.F.R. § 404.1563(e). Without transferrable skills, he would be deemed to be disabled even if he were able to do the full range of light or sedentary work. Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tables 1 & 2.

The Commissioner's final decision denying Mark Worker's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and

reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:   February 12, 2018**

                              s/ J. Phil Gilbert
                              **J. PHIL GILBERT**
                              **UNITED STATES DISTRICT JUDGE**